**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JOSEPH KENNY BATTS | Criminal No. 18-215 (MAS)<br><br>**MEMORANDUM OPINION** |

This matter comes before the Court upon Defendant Joseph Kenny Batts's ("Defendant") Motion for Acquittal pursuant to Federal Rule of Criminal Procedure 29(c) ("Rule 29") and for a New Trial pursuant to Federal Rule of Criminal Procedure 33(a) ("Rule 33"). (ECF Nos. 99, 100.) The United States of America (the "Government") opposed. (ECF No. 102.) For the reasons stated below, the Court denies Defendant's Motion for Acquittal and for a New Trial.

**I.   BACKGROUND**

Defendant was indicted on one count of conspiracy to defraud the United States in violation of 18 U.S.C. § 371 and five counts of aiding and assisting in the preparation of false federal income tax returns in violation of 26 U.S.C. § 7206(2). (Indictment, ECF No. 1.) Trial began on September 11, 2019. (Trial Transcript ("Tr.") I 1:10, ECF No. 94.) The Government's evidence at trial consisted of testimony from witnesses, such as IRS agents and taxpayers whose returns were prepared by Defendant, as well as various records, including income tax returns, a recording of Defendant preparing a tax return for an undercover agent, and Form 1098-Ts recovered from Defendant's computer. After the Government rested, Defendant moved for a judgment of acquittal on Counts One through Six of the Indictment. (Tr. IV 753:4–17, ECF No. 97.) The Court reserved decision on the motion. (Tr. IV 755:12–14.) Defendant then rested without calling any witnesses.

(Tr. IV 758:18–19.) The trial ended on September 17, 2019. (Tr. V 919:21–22, ECF No. 98.) That same day, the jury returned a verdict of guilty on Counts One through Six. (Tr. V 921:3–25.)

## II. LEGAL STANDARD

### A. Motion for Judgment of Acquittal

"Under Rule 29, a defendant who asserts that there was insufficient evidence to sustain a conviction shoulders 'a very heavy burden.'" *United States v. Tiangco*, 225 F. Supp. 3d 274, 278–79 (D.N.J. 2016) (quoting *United States v. Anderson*, 108 F.3d 478, 481 (3d Cir. 1997)). The Court "cannot substitute its judgment for that of the jury." *Id.* at 279. Rather, the Court "must view the evidence, and all reasonable inferences therefrom, in the light most favorable to the prosecution, resolving all credibility issues in the prosecution's favor." *Id.* "Having done so, the [C]ourt must uphold the conviction if '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis in original).

### B. Motion for New Trial

Pursuant to Rule 33(a), the Court may vacate any judgment and grant a new trial if the interest of justice so requires. Fed. R. Crim. P. 33(a). A motion for new trial under Rule 33 will be granted when the "charge is against the weight of the evidence." *United States v. Salahuddin*, 765 F.3d 329, 346 (3d Cir. 2014). A court should grant a motion for a new trial only when "there is a serious danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted." *United States v. Hamilton*, No. 05-876, 2010 WL 1027412, at *1 (D.N.J. Mar. 18, 2010) (quoting *United States v. Brennan*, 326 F.3d 176, 189 (3d Cir. 2003)). When an error has allegedly been committed at trial, "[a] new trial is required on this basis only when 'the[] errors, when combined, so infected the jury's deliberations that they had a substantial influence on the outcome of the trial.'" *United States v. Copple*, 24 F.3d 535, 547 n.17 (3d Cir. 1994) (second

2

alteration in original) (quoting *United States v. Thornton*, 1 F.3d 149, 156 (3d Cir. 1993)). Consequently, Rule 33 motions must be "granted sparingly and only in exceptional cases." *Brennan*, 326 F.3d at 189. Finally, the evidence is not viewed favorably to one side or the other, instead the Court "exercises its own judgment." *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002).

### III. PARTIES' POSITIONS

#### A. Motion for Judgment of Acquittal

##### 1. Count One

Defendant argues that no rational juror could have found that the Government proved all elements of Count One beyond a reasonable doubt. (Def.'s Moving Br. 5, ECF No. 99-2.) Defendant asserts that Damien Askew ("Askew") and Rudolph Sanders ("Sanders") (collectively, "the Co-conspirators") did not have time to interact with Defendant because of the high volume of work Tax Pro's employees were expected to handle. (*Id.*) Additionally, Defendant asserts that he did not provide any on-the-job training to the Co-conspirators. (*Id.*) Defendant argues that, because the Co-conspirators did not have time to interact with Defendant and did not receive training from Defendant, the Government failed to show that Defendant was a member of the conspiracy and that Defendant had a unity of purpose to engage in the conspiracy. (*Id.*) Defendant, therefore, asserts that the Government failed to prove that he was a party to the conspiracy beyond a reasonable doubt. (*Id.*) Defendant also contends that the Government failed to prove that Defendant was aware of the Co-conspirators' illegal conduct. (*Id.*)

The Government argues that there was abundant evidence to support the jury's verdict on Count One. (Gov't's Opp'n Br. 3, ECF No. 102.) The Co-conspirators testified in detail about the nature and scope of the conspiracy. (*Id.*) Additionally, the Government produced e-mail messages that corroborated portions of Askew's testimony regarding Christine Johnson's ("Johnson"),

3

Defendant's girlfriend, role in the conspiracy. (*Id.* at 3–4.) Finally, the Government asserts that multiple false 1098-Ts were submitted on behalf of clients of Tax Pro's and multiple false 1098-Ts were recovered from Defendant's computer. (*Id.*) The Government, therefore, argues that Defendant must have been an active member of the conspiracy and aware of the Co-conspirators' actions. (*Id.*)

### 2. Counts Two Through Six

Defendant also argues that "no rational jury could have found that [Defendant] aided or assisted in the preparation of these taxpayers' false federal income tax returns." (Def.'s Moving Br. 6.) More specifically, Defendant argues that the Government failed to prove that Defendant did not believe the tax returns were accurate and that Defendant acted willfully. (*Id.*) Defendant asserts that "taxpayers discussed certain items with [Defendant] for reporting purposes, but then omitted them during IRS interviews." (*Id.* at 7.) Defendant asserts that these omitted topics were material omissions that were necessary for the jury to understand why Defendant had a good faith belief in the accuracy of the tax returns he prepared. (*Id.*) Defendant, therefore, argues that no rational juror could find that he acted willfully and he, consequently, is not guilty of Counts Two through Six. (*Id.*)

The Government argues that there was "overwhelming evidence that [Defendant] was guilty." (Gov't's Opp'n Br. 4.) The Government contends that Defendant's argument must fail because of the weight of the witness testimony. (*Id.* at 5.) Additionally, some of the taxpayers' own records, such as mortgage forms, W-2s, and receipts from charitable donations, do not match the information Defendant entered on their tax forms. (*Id.*) Furthermore, the jury heard a recording of Defendant preparing a tax return and including information on the return that the undercover IRS agent did not instruct Defendant to include. (*Id.*) Finally, to show willfulness, the Government

notes that the entire time Defendant was preparing tax returns he was using the identity of other tax preparers, which shows that Defendant took steps to hide his identity because he knew what he was doing was illegal. (*Id.*)

## B. Motion for New Trial

### 1. Count One

Defendant argues that "[t]he use of [witness] testimony, without more, to support [Defendant's] conspiracy conviction produces a manifest injustice to him." (Def.'s Moving Br. 9.) Defendant argues that the only evidence the Government produced for Count One was witness testimony from the Co-conspirators. (*Id.* at 8.) Defendant contends that the Co-conspirators were not credible and that their testimony alone is not enough to sustain a conviction for Count One. (*Id.* at 9.)

The Government argues that a new trial should be granted only in exceptional cases. (Gov't's Opp'n Br. 6.) The Government asserts that the testimonies of the Co-conspirators were corroborated by each other and by other evidence in the record, such as documents, client testimony, and a recording. (*Id.*) Additionally, "[e]ven where testimony is 'patently incredible or defies physical realities' . . . a defendant is still not necessarily entitled to a new trial." (*Id.* at 6 (quoting *United States v. Sanchez*, 969 F.2d 1409, 1414 (2d Cir. 1992).) To support its position, the Government cites several cases where refusals to grant new trials were upheld. (*Id.* at 6–7.) The Government, therefore, contends that it is improper to move for a new trial solely because Defendant believes the jury should not have credited the witness testimony as highly as it did. (*Id.* at 7.)

### 2. Counts Two Through Six

Defendant contends, as above, that the only evidence the Government produced to sustain his conviction on Counts Two through Six was witness testimony. (Def.'s Moving Br. 8.) Additionally, Defendant argues that the witness testimony should not be believed for two reasons. First, Defendant argues that the Co-conspirators testified with an "obvious bias and self-serving interest to avoid their own prosecution." (*Id.*) Second, as above, Defendant argues that the taxpayer witnesses "withheld significant, exculpatory ... information" from the Government's investigative forces. (*Id.*) The Government, however, argues that at trial "none of the taxpayer witnesses were impeached on any major details." (Gov't's Opp'n Br. 6.)

## IV. DISCUSSION

### A. Motion for Acquittal

#### 1. Count One

The Government must prove four elements beyond a reasonable doubt for a jury to find Defendant guilty of conspiracy to defraud the United States under 18 U.S.C. § 371. First, two or more parties must agree to defraud the United States. 18 U.S.C. § 371; *United States v. Rankin*, 870 F.2d 109, 113 (3d Cir. 1989); *see* Third Circuit Model Criminal Jury Instructions § 6.18.371B. Second, Defendant must have been a party to that agreement. 18 U.S.C. § 371; *Rankin*, 870 F.2d at 113; *see* Third Circuit Model Criminal Jury Instructions § 6.18.371B. Third, Defendant must have joined the agreement or conspiracy knowing of its objective to defraud the United States. Third Circuit Model Criminal Jury Instructions § 6.18.371B. Fourth, a member of that group must have made an overt act to further that goal. 18 U.S.C. § 371; *Rankin*, 870 F.2d at 113; *see* Third Circuit Model Criminal Jury Instructions § 6.18.371B.

Defendant argues that no rational juror could have found that the Government proved elements two and three of Count One beyond a reasonable doubt. (Def.'s Moving Br. 5.) First,

Defendant attacks the Co-conspirator's credibility by reasoning that they could not possibly have had time to hear or observe Defendant at work. (*Id.*) All credibility issues, however, are resolved in the Government's favor on a Rule 29 motion. *Anderson*, 108 F.3d at 481. If the Court were to accept Defendant's contention that the Co-conspirators were not credible, the Court would necessarily substitute the jury's judgment with its own. Defendant's argument, therefore, must fail.

The following evidence introduced at trial supports the first two elements: Askew testified that Defendant personally trained him on how to prepare false tax records. (Tr. II 308:17–22, ECF No. 95.) Sanders testified that he conspired with Askew and Defendant. (Tr. III 511:3–5, ECF No. 96.) Additionally, Askew testified that he and Defendant used Johnson to provide false 1098-Ts. (Tr. II 349:17–352:22.) Furthermore, the Government introduced records of false 1098-Ts recovered from Defendant's computer. (Exs. 601–02; Tr. III 617:15–618:22.) The Court finds that there was ample evidence presented at trial for a rational juror to conclude that two or more people had an agreement and Defendant was one of those parties.

For the third element, Sanders and Askew testified that Defendant ordered Sanders to falsify tax returns or Sanders would be fired. (Tr. II 357:8–13; Tr. III 517:14–20.) Furthermore, Askew testified that Defendant instructed Askew on how to prepare false returns. (Tr. II 308:20–22.) Additionally, Askew testified that both himself and Defendant would use Johnson to obtain false 1098-Ts. (Tr. II 351:21–352:2.) Sanders also testified that he was present when Defendant entered false information in a tax return. (Tr. III 520:12–17.) The Court finds, consequently, that a rational juror could have concluded that Defendant shared a unity of purpose with the other Co-conspirators.

For the fourth element, the Government introduced into evidence tax returns that were submitted to the IRS after being prepared by Defendant. (Exs. 201–07.) Askew testified that

Defendant had Johnson create false 1098-Ts for Defendant and Co-conspirators. (Tr. II 350:12–17.) Additionally, J.A. testified that Defendant prepared his 2012, 2013, and 2014 tax returns.[1] (Tr. I 35:19–20.) M.C. testified that Defendant prepared her and her husband's joint 2015 tax returns. (Tr. III 461:8–9.) K.S. testified that Defendant prepared her and her then-husband's 2016 tax returns. (Tr. III 585:11–12.) The Government also played a recording of Defendant preparing tax returns for an undercover IRS agent. (Tr. I 151:10–152:11.)

Furthermore, the Government presented evidence that Defendant was using other tax preparers' identification numbers, including the Co-conspirators', to prepare false tax returns. Through the testimony of three different witnesses, the Government showed that Defendant prepared taxes under false names. First, the Government introduced testimony from witnesses that Defendant prepared their taxes even though their tax forms listed another preparer. (Tr. I 35:19–36:3, 40:12–19; Tr. III 461:2–9, 589:5–9.) Second, Clifford Young ("Young") testified that Defendant used Young's Social Security Number to file taxes for clients under Young's name. (Tr. IV 691:8–693:6.) Third, the Government also produced testimony from the Co-conspirators that Defendant used their names to submit false tax returns. (Tr. II 342:2–6; Tr. III 519:21–24.)

Additionally, the requisite overt act may be committed by any member of the conspiracy. (Tr. V 791:17–20.) Sanders testified to falsifying tax returns. (Tr. III 507:12–19.) Askew also testified to filing false tax returns. (Tr. II 308:14–16.) Finally, Askew testified that he and Defendant provided false 1098-Ts to other tax preparers at Tax Pro's. (Tr. II 352:15–19.) These overt acts taken by the Co-conspirators satisfy this element as well. Thus, the Court finds a rational juror could have concluded that a member of the conspiracy committed an overt act.

---

[1] Consistent with the Government's practice, the Court uses initials for those anonymized in the Indictment.

8

A rational juror, therefore, could have found that the Government proved all elements of Count One beyond a reasonable doubt. The Court denies Defendant's Motion for Acquittal as to Count One.

### 2. Counts Two through Six

The Government must prove four elements beyond a reasonable doubt for a jury to find Defendant guilty of filing false statements in tax returns under 26 U.S.C. § 7206. First, Defendant must aid or assist in, or procure, counsel, or advise the preparation of federal income tax returns that are subsequently filed with the IRS. 26 U.S.C. § 7206(2); *United States v. Gambone*, 314 F.3d 163, 174 (3d Cir. 2003); *see* UNITED STATES DEPARTMENT OF JUSTICE TAX DIVISION, CRIMINAL TAX MANUAL § 13.04 (2012). Second, those tax returns must be false in any material matter. 26 U.S.C. § 7206(2); *Gambone*, 314 F.3d at 174. A material matter is any matter that would impact the Government's ability to accurately calculate an individual's tax liability or refund. Third Circuit Model Criminal Jury Instructions § 6.26.7206-3; (Tr. V 798:18–20.) Third, Defendant must not believe that the returns were true and correct as to those material matters. Third Circuit Model Criminal Jury Instructions § 6.26.7206-4. Finally, Defendant must act willfully. 26 U.S.C. § 7206(2); *Gambone*, 314 F.3d at 174; *see* UNITED STATES DEPARTMENT OF JUSTICE TAX DIVISION, CRIMINAL TAX MANUAL § 13.04 (2012). Willfulness in a tax setting means "intentional action with bad purpose; that is, a deliberate commission of the specified violation with the idea of evading taxes and with the intention of getting away with it." *United States v. La Haye*, 548 F.2d 474, 475 (3d Cir. 1977).

Defendant argues that no rational juror could have found that he acted willfully. (Def.'s Moving Br. 6.) Defendant asserts that the taxpayer witnesses told him different information than what they told IRS agents in interviews. (*Id.* at 6–7.) Furthermore, Defendant contends that this

9

different information provided a good faith basis for his belief that the information he entered on the tax returns was correct. (*Id.* at 7.)

Defendant's argument, however, is nothing more than an attack on the credibility of the Government's witnesses. Once again, the Court must resolve all credibility issues in favor of the Government. *Anderson*, 108 F.3d at 481. The Court reviews the relevant witness testimony for Counts Two through Six to determine if a rational juror could conclude that the Government proved all elements beyond a reasonable doubt.

Count Two charges Defendant with the preparation of false tax returns for J.A. for the 2012 tax year. (Indictment 8.) First, J.A. testified that Defendant prepared his 2012 tax return. (Tr. I 35:19–20.) Second, J.A. testified that his tax return falsely claimed he earned an education credit in 2012. (Tr. I 42:20–23.) IRS Revenue Agent Robert Illuzzi ("Agent Illuzzi") testified that, as a result of the false statement, the IRS lost money because it was unable to accurately calculate J.A.'s tax liability. (Ex. 810; Tr. IV 744:3–5.) Third, J.A. testified that he did not tell Defendant that he went to college. (Tr. I 43:3–44:4.) Finally, J.A. testified that Defendant falsely claimed an education credit without documentation or instruction. (Tr. I 42:10–23.) A rational juror, therefore, could find that Defendant intentionally assisted in filing J.A.'s false 2012 tax return.

Count Three charges Defendant with the preparation of false tax returns for J.A. for the 2013 tax year. (Indictment 8.) First, J.A. testified that Defendant prepared his 2013 tax return. (Tr. I 44:11–13.) Second, J.A. testified that his 2013 tax return falsely claimed he earned an education credit. (Tr. I 49:15–17.) Additionally, J.A. testified that his tax return stated a false childcare expense. (Tr. I 47:17–19.) Agent Illuzzi testified that, as a result of those false statements, the IRS lost money because it was unable to accurately calculate J.A.'s tax liability. (Ex. 810; Tr. IV 744:3–5.) Finally, J.A. testified that Defendant falsely claimed the above deductions

without documentation or instruction. (Tr. I 48:3–18, 50:5–22.) A rational juror, therefore, could find that Defendant intentionally assisted in filing J.A.'s false 2013 tax return.

Count Four charges Defendant with the preparation of false tax returns for J.A. for the 2014 tax year. (Indictment 8.) First, J.A. testified that Defendant prepared his 2014 tax return. (Tr. I 51:1–3.) Second, J.A. testified that his tax return contained a false Schedule C loss, a false childcare expense, and a false education credit. (Tr. I 56:3–5, 57:20–22, 58:25–59:2.) Agent Illuzzi testified that, as a result of those false statements, the IRS lost money because it was unable to accurately calculate J.A.'s tax liability. (Ex. 810; Tr. IV 744:3–5.) Finally, J.A. testified that he did not tell Defendant that he had a Schedule C loss, attended college, or had childcare expenses. (Tr. I 56:11–57:13, 58:4–9, 59:3–17.) J.A. testified that Defendant added those inaccurate statements without documentation or instruction. (Tr. I 51:1–3.) The Government produced J.A.'s W-2 to corroborate his testimony. (Ex. 504; Tr. I 54:4–10.) A rational juror, therefore, could find that Defendant intentionally assisted in filing J.A.'s false 2014 tax return.

Count Five charges Defendant with the preparation of false joint tax returns for M.C. and her husband for the 2015 tax year. (Indictment 8.) First, M.C. testified that Defendant prepared her and her husband's 2015 tax return. (Tr. III 461:8–9.) Second, M.C. testified that the 2015 tax return falsely claimed deductible gifts in excess of their actual gifts and a false Schedule C loss. (Tr. III 465:16–17, 466:10–11.) Agent Illuzzi testified that as a result of those false statements, the IRS lost money because it was unable to accurately calculate M.C. and her husband's tax liability. (Ex. 810; Tr. IV 744:3–5.) Finally, M.C. testified that Defendant falsely claimed the above deductions without documentation or instruction. (Tr. III 465:18–19.) The Government provided M.C.'s W-2s and donation receipts from 2015 to corroborate her testimony. (Ex. 507A; Tr. III

463:10–13.) A rational juror, therefore, could conclude that Defendant intentionally assisted in filing M.C. and her husband's false 2015 tax return.

Finally, Count Six charges Defendant with the preparation of false tax returns for J.S. and her then-husband for the 2016 tax year. (Indictment 8.) First, J.S. testified that Defendant prepared their 2016 tax return. (Tr. III 585:11–12.) Second, J.S. testified that their return falsely claimed a charitable gift and a Schedule C loss. (Tr. III 589:22–590:2, 591:6–8.) Agent Illuzzi testified that, as a result of those false statements, the IRS lost money because it was unable to accurately calculate J.S. and her then-husband's tax liability. (Ex. 810; Tr. IV 744:3–5.) Finally, J.S. testified that Defendant falsely claimed the above deductions without documentation or instruction. (Tr. III 590:3–8, 591:9–19.) Additionally, the Government corroborated J.S.'s testimony with her and her then-husband's records, such as W-2s, mortgage documents, and bank statements, which she gave to Defendant to prepare her tax return. (Ex. 513A; Tr. III 586:13–587:7.) A rational juror, therefore, could find that Defendant intentionally assisted in filing J.S.'s false 2015 tax return.

In sum, the Court finds that a rational juror could have found Defendant guilty of Counts One through Six. The Court, accordingly, denies Defendant's Rule 29 motion.

### B. Motion for New Trial

#### 1. Count One

Defendant argues that a new trial is warranted because his conviction on Count One was so contrary to the weight of the evidence that an injustice has occurred. (Def.'s Moving Br. 7.) Defendant's only challenge to Count One is that the Co-conspirators' testimony was not credible, and, therefore, a new trial should be granted. (*Id.* at 8.) An attempt to impeach a witness, however, is "more properly made to a jury." *Salahuddin*, 765 F.3d at 346. Any attempts to discredit or impeach the witnesses have already been heard and considered by the jury. The fact that Defendant

was not able to persuade any of the jurors at trial that the witnesses should not be believed does not entitle Defendant to a new trial.

To support Count One, the Government introduced the testimony of both Co-conspirators. Askew testified that Defendant showed him how to create false tax returns. (Tr. II 308:20–22.) Sanders testified that Defendant became angry at him for not preparing client tax returns with false information. (Tr. III 517:14–20.) Askew testified that Defendant used Johnson for the purpose of creating false 1098-Ts. (Tr. II 349:17–352:22.) The Government also produced e-mail messages titled "1098-T" Defendant received from an e-mail account that appears to belong to Johnson. (Exs. 609–10.) Additionally, the Government provided false 1098-Ts that were recovered from Defendant's computer. (Exs. 601–02; Tr. III 617:15–618:22.) The recovered 1098-Ts were last edited by someone with the same name as Johnson. (Tr. III 619:19–20.) The Government, therefore, provided not just witness testimony, but also documentary evidence that corroborated witness testimony.

Considering the Government's witness testimony and corroborating evidence, the Court finds that there is little risk that a miscarriage of justice has occurred. Defendant's failure to impeach the Government's witnesses does not equate to a miscarriage of justice. Additionally, Defendant does not allege that errors infected the jury's deliberations. Because Defendant's only challenge to Count One is that the jury was wrong to believe the witnesses, this is not one of the "exceptional cases" where a new trial should be granted for Count One. The Court denies Defendant's Rule 33 Motion as to Count One.

### 2. Counts Two Through Six

Defendant challenges the verdict on Counts Two through Six solely by attacking the credibility of the witnesses. (Def.'s Moving Br. 8.) First, the Government produced records that

individuals provided to Defendant to file their tax returns, including W-2s, mortgage payments, and charitable donation receipts. (Tr. III 463:22–464:9.) To support a finding that J.A. was not entitled to a personal business Schedule C loss for Counts Two through Four, the Government introduced his W-2 form. (Ex. 504; Tr. I 52:22–54:10.) J.A.'s W-2 form shows that he was an employee of GMP Contracting and was not entitled to a Schedule C loss. (*Id.*) For Count Five, the Government introduced M.C.'s W-2 and charitable donation receipts. (Ex. 507(A); Tr. III 463:10–13.) Defendant claimed a charitable donation in excess of the supporting receipts and a false Schedule C loss on M.C.'s tax returns. (Tr. III 459:16–22, 460:13–17.) For Count Six, the Government introduced J.S.'s W-2s, mortgage statements, and bank records. (Ex. 513(A); Tr. III 585:16–586:3.) Although the records did not support a Schedule C loss, Defendant claimed J.S. and her husband had a Schedule C loss on their tax returns. (Tr. III 591:2–8.)

Second, the Government produced false 1098-Ts. Askew described in detail the process to obtain a false 1098-T from Johnson. (Tr. II 346:19–352:22.) Additionally, an IRS agent testified that the 1098-Ts the IRS received for clients of Tax Pro's were false and were sent from fax numbers associated with Defendant, such as Johnson's place of employment and the Tax Pro's office. (Tr. II 252:9–10, 255:13–14, 256:10–16, 336:15–19.) The Government also provided two false 1098-Ts recovered from Defendant's computer. (Ex. 601; Tr. III 617:15–618:22.) In addition, the Government introduced metadata from those recovered 1098-Ts, which revealed that the last person to edit the document had the same name as Johnson. (Ex. 601(A).) The Government also introduced eleven more false 1098-Ts that were found on Defendant's computer, (Ex. 602; Tr. III 620:8–16,) and the accompanying metadata, (Ex. 602(A); Tr. III 622:18–623:2). The metadata showed that a person with the same first name as Johnson was the last person to edit those documents. (Tr. III 623:1–2.) Finally, the Government introduced e-mail messages recovered from

Defendant's computer that were sent from an e-mail address similar to Johnson's name with "1098-T" in the subject headings. (Ex. 609; Ex. 610; Tr. III 626:14–631:1.) One of the recovered "1098-T" e-mail messages from Defendant's computer contained the same eleven taxpayer names that were also on the eleven false 1098-Ts recovered from Defendant's computer. (Tr. III 630:18–631:1.)

The final piece of circumstantial evidence is a recording made by an undercover IRS agent. (Tr. I 151:13–152:5.) In the recording, an undercover IRS agent told Defendant that he did not attend college in that tax year. (Audio Recording at 6:11, Ex. 301-A.) The tax return Defendant prepared for the agent, however, claimed an education credit. (Tr. I 150:23–151:15.)

Therefore, the Government produced witness testimony as well as circumstantial evidence to show that Defendant committed the crimes for which he was convicted. Defendant's only contention is that he believes the jury should not have believed the witnesses. Here, considering the weight of the evidence against Defendant, the Court does not find that "a serious danger that a miscarriage of justice has occurred." *Hamilton*, 2010 WL 1027412, at *1. The present case is not an example of an exceptional case where a Rule 33 motion is proper. The Court, consequently, denies Defendant's Rule 33 motion for Counts Two through Six.

## V. CONCLUSION

For the reasons set forth above, Defendant's Motion for Acquittal and for New Trial is denied. An order consistent with this Memorandum Opinion will be entered.

*/s/ Michael A. Shipp*
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE